FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
NOV 8 2011
JAMES N. HATTEN, Clerk
By: Deputy Clerk

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA : CRIMINAL INDICTMENT
:
v. : NO. 1:11CR505
:
ARTHUR WAYNE SINGLETON :

THE GRAND JURY CHARGES THAT:

COUNTS ONE THROUGH FOURTEEN
(Wire Fraud)
18 U.S.C. § 1343

1. From in or about February 20, 2008, through at least May 2010, in the Northern District of Georgia and elsewhere, the defendant, ARTHUR WAYNE SINGLETON, aided and abetted by others known and unknown to the Grand Jury, did knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain money and property from federal agencies, by means of false and fraudulent pretenses, representations and promises, including omission of material facts, well knowing that said pretenses, representations and promises were and would be fraudulent when made.

Background

2. At all times relevant to this indictment:

a. Defendant ARTHUR WAYNE SINGLETON was an owner of Singleton Enterprises - GMT Mechanical - a Joint Venture ("the Joint Venture"), a construction company located in Luthersville,

Georgia, in the Northern District of Georgia, from in or about June 11, 2007 through January 9, 2009. The mailing address of the purported Joint Venture was Post Office Box 23, Luthersville, Georgia, 30251-0023 ("the Post Office Box").

b. Defendant SINGLETON's partner in the purported Joint Venture was GT, a service-disabled veteran as defined in Title 38, United States Code, Section 101 and the owner of GMT Mechanical, a construction company formed on May 31, 2007, in Luthersville, Georgia. The mailing address of GMT Mechanical was the Post Office Box.

c. Title 15, United States Code, Section 632(q) provided that a "small business concern owned and controlled by service-disabled veterans" (hereinafter "SDVO SBC") meant a small business concern -

> (A) not less than 51 percent of which is owned by one or more veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more veterans; and
>
> (B) the management and daily business operations of which are controlled by one or more veterans.

d. Service-Disabled Veteran-Owned contracts ("SDVO" contracts") were contracts awarded only to SDVO SBCs through a set-aside award restricted to SDVO SBCs.

Scheme to Defraud

3. It was part of and in furtherance of his scheme to defraud that the Defendant, ARTHUR WAYNE SINGLETON, bid on and received SDVO contracts, based upon false pretenses, misrepresentations and material omissions, as follows:

a. GT is a veteran of the Vietnam War who suffers from severe knee injuries, among other health issues, as a result of his military service. In 2007, GT underwent several surgeries to address his knee problems, and became bedridden as a result of complications from the operations.

b. On a date unknown to the Grand Jury, but sometime during 2007, defendant SINGLETON visited GT's home. While GT was bedridden, defendant SINGLETON proposed the idea that SINGLETON could use GT's service-disabled status to obtain set-aside construction contracts from the federal government. When GT agreed to help, defendant SINGLETON asked GT to sign paperwork to register GMT Mechanical and the purported Joint Venture.

c. Though federal law required that, in order to bid on SDVO set-aside contracts, the service-disabled veteran had to manage the bidding company and oversee the company's daily business operations, GT had no construction experience and therefore did not

control the management or daily business operations of GMT Mechanical or the purported Joint Venture.

d. In fact, defendant SINGLETON, who had more than 30 years of construction experience and federal contract experience, completely controlled both GMT Mechanical and the purported Joint Venture. Defendant SINGLETON prepared and submitted all of the contract bids, corresponded with the contracting agencies, and handled the performance of the work on the contracts. GT played no role in managing or overseeing GMT Mechanical or the Joint Venture, and performed no work related to either company, with the exception of participating in a single phone call.

e. GT did not even receive mail on behalf of GMT Mechanical or the Joint Venture. Defendant SINGLETON had asked an associate of his to open the Post Office Box, using the associate's name, and defendant SINGLETON had authority to access the Post Office Box, while GT did not have such access.

f. Although the Defendant was aware that neither GMT Mechanical nor the purported Joint Venture met the definition of an SDVO SBC because GT did not own 51% of either business and did not control their management or daily operations, the Defendant nevertheless bid for SDVO contracts through GMT Mechanical and the Joint Venture.

g. On September 12, 2007, the purported Joint Venture bid on an SDVO contract with the Department of Veterans' Affairs

(hereinafter "VA") to replace a roof in Illinois. On September 19, 2007, the Joint Venture was awarded the contract for $308,187 ("VA Contract A").

h. On a date unknown to the Grand Jury, but before September 29, 2007, the Joint Venture bid on an SDVO contract with the VA to replace a roof in Ohio. On September 29, 2007, the Joint Venture was awarded the contract for $777,020 ("VA Contract B").

i. On February 20, 2008, following an inquiry by the VA, the Small Business Administration ("SBA") mailed a letter to GT, notifying him that neither GMT Mechanical nor the Joint Venture qualified as an SDVO because GT did not exercise enough control over GMT Mechanical. The SBA prohibited both GMT Mechanical and the Joint Venture from submitting offers on future SDVO contracts. The February 20, 2008 letter was mailed to the Post Office Box that defendant SINGLETON, and not GT, was able to access.

j. Following the February 20, 2008 letter from the SBA, defendant SINGLETON made payments to GT totaling $17,964. Defendant SINGLETON told GT that some of the payments were being made because defendant SINGLETON needed to give GT some money, in order to make it look as though GT was part of the business. GT did not receive 51% of the profits from GMT Mechanical or the purported Joint Venture, as required by federal law for either company to qualify as an SDVO SBC.

k. On April 4, 2008, GMT Mechanical bid on an SDVO contract with the United States Department of Agriculture, Agricultural Research Service in Iowa. On May 16, 2008, GMT Mechanical was awarded the contract for $290,157 ("USDA Contract"). The defendant forged GT's name on the bid, as well as on all subsequent correspondence with the USDA. Defendant SINGLETON well knew that GMT Mechanical was not eligible for said SDVO set-aside contract. On May 24, 2008, defendant SINGLETON subcontracted the work to be performed on the USDA Contract to another company for $239,000, forging GT's name on the letter accepting the subcontracting bid.

l. On July 24, 2008, GMT Mechanical bid on an SDVO contract with the United States Department of Homeland Security, United States Coast Guard in Wyoming. On August 7, 2008, GMT Mechanical was awarded the contract for $96,378 ("Coast Guard Contract"). Defendant SINGLETON forged GT's name on the bid, as well as on all subsequent correspondence with the Coast Guard. Defendant SINGLETON well knew that GMT Mechanical was not eligible for said SDVO set-aside contract

m. On August 8, 2008, GMT Mechanical bid on an SDVO contract with the United States Department of Defense, United States Army Corps of Engineers, in North Dakota. On September 2, 2008, GMT Mechanical was awarded the contract for $1,375,090 ("Army Contract"). Defendant SINGLETON forged GT's name on the bid, as

well as on all correspondence with the U.S. Army Corps of Engineers. The Defendant never informed GT about the existence of the Army Contract. Defendant SINGLETON well knew that GMT Mechanical was not eligible for said SDVO set-aside contract.

n. In or about January 2009, GT informed defendant SINGLETON that GT wanted to dissolve the purported Joint Venture. On January 9, 2009, GT removed his name from all bank accounts belonging to the purported Joint Venture. Nevertheless, defendant SINGLETON continued to correspond with federal agencies by forging GT's signature on the correspondence.

Execution of the Scheme

4. From on or about February 20, 2008, through at least May 2010, in the Northern District of Georgia and elsewhere, the defendant, ARTHUR WAYNE SINGLETON, aided and abetted by others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, did cause to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals and sounds; that is, wire transfers of monies as payments for SDVO set-aside contracts from the agencies listed below in Column B, on the dates listed below in Column C, for the amounts listed below in Column D, to the Meriwether Bank and Trust account numbers listed below in Column E:

| A | B | C | D | E |
|---|---|---|---|---|
| COUNT | AGENCY | DATE | AMOUNT | BANK ACCOUNT |
| 1 | Veterans Affairs | 2/20/2008 | 256,625.00 | XXX3402 |
| 2 | Veterans Affairs | 6/23/2008 | 27,145.00 | XXX3402 |
| 3 | Veterans Affairs | 5/16/2008 | 153,425.00 | XXX3402 |
| 4 | Veterans Affairs | 8/18/2008 | 565,478.00 | XXX3402 |
| 5 | USDA | 9/10/2008 | 131,900.00 | XXX3402 |
| 6 | USDA | 10/24/2008 | 148,341.42 | XXX3402 |
| 7 | USDA | 12/10/2008 | 10,000.00 | XXX3402 |
| 8 | Army | 5/20/2009 | 345,221.00 | XXX3941 |
| 9 | Army | 6/23/2009 | 329,272.00 | XXX3941 |
| 10 | Army | 7/21/2009 | 465,250.00 | XXX3941 |
| 11 | Army | 12/24/2009 | 269,199.00 | XXX3941 |
| 12 | Army | 5/20/2010 | 20,000.00 | XXX3941 |
| 13 | Coast Guard | 7/20/2009 | 78,378.00 | XXX3941 |
| 14 | Coast Guard | 11/25/2009 | 18,000.00 | XXX3941 |

COUNT FIFTEEN
(Major Fraud)
18 U.S.C. § 1031

5. The Grand Jury incorporates and re-alleges Paragraphs Two and Three above as if fully set forth herein.

6. On or about September 2, 2008, the United States, in a procurement of services, awarded Contract Number W9128F-08-C-0021, a set-aside contract for Service-Disabled Veteran-Owned Small

Business Concerns, the value of said contract being in excess of $1,000,000.

7. Beginning on or about August 8, 2008, and continuing up to on or about May 20, 2010, in connection with the foregoing procurement, the defendant, ARTHUR WAYNE SINGLETON, devised a scheme and artifice to defraud the United States and to obtain money by means of false and fraudulent pretenses, representations and promises. Specifically, the Defendant used GMT Mechanical to bid on and enter into an SDVO set-aside contract, Contract Number W9128F-08-C-0021, valued at $1,375,000, with the United States Department of Defense, United States Army Corps of Engineers, in North Dakota, though the Defendant well knew that GMT Mechanical was not eligible for said SDVO set-aside contract.

8. From on or about August 8, 2008, and continuing up to on or about May 20, 2010, within the Northern District of Georgia and elsewhere, the defendant, ARTHUR WAYNE SINGLETON, knowingly executed and attempted to execute the aforementioned scheme and artifice with the intent -

a. to defraud the United States; and

b. to obtain money by means of false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1031.

FORFEITURE PROVISION

Upon conviction of one or more of the offenses alleged in Counts One through Fourteen of this Indictment, the defendant, ARTHUR WAYNE SINGLETON, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, including but not limited to the following:

a. Money Judgment

A money judgment representing the amount of proceeds obtained as a result of the offenses.

Upon conviction for the offense alleged in Count Fifteen of this Indictment, the defendant, ARTHUR WAYNE SINGLETON, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(3), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation, including but not limited to the following:

a. Money Judgment

A money judgment representing the amount of proceeds obtained as a result of the offenses.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a

third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A True BILL

FOREPERSON

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

SHANYA J. DINGLE
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 159277

600 U.S. Courthouse
75 Spring Street S.W.
Atlanta, GA 30303
V: 404/581-6000
F: 404/581-6181